# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HYDRO NET LLC, | ) |
| Plaintiff, | ) ) ) C. A. No. 1:21-CV-02780 (JSR) |
| v. | ) ) ) |
| SHARP ELECTRONICS CORPORATION, | ) ) ) |
| Defendant. | ) ) ) ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Cono A. Carrano (NY Bar No. 2622116)
Ryan S. Stronczer (*pro hac vice* pending)
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
ccarrano@akingump.com
rstronczer@akingump.com
*Counsel for Defendant Sharp Electronics Corporation*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................1 |
| II. | LEGAL STANDARDS........................................................................................................3 |
| III. | ARGUMENT........................................................................................................................5 |
| | A. | Plaintiff fails to plead facts to support a plausible allegation of direct infringement by SEC.................................................................................................5 |
| | B. | Similarly, Plaintiff fails to plead a plausible claim for indirect infringement. ............................................................................................................13 |
| IV. | CONCLUSION...................................................................................................................14 |

i

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*3D Sys., Inc. v. Formlabs, Inc.*,
  2014 WL 1904365 (S.D.N.Y. May 12, 2014) ........................................................................... 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 2, 3

*Atrip v. Ball Corp.*
  735 Fed. Appx. 708 (Fed Cir. 2018) ........................................................................................ 3

*Ave. Innovations v. E. Mishan & Sons Inc.*,
  2019 U.S. Dist. LEXIS 172386 (S.D.N.Y. Sep. 10, 2019) ....................................................... 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................. 2, 3

*In re Bill of Lading*,
  681 F.3d 1323 (Fed. Cir. 2012) .............................................................................................. 13

*Charles v. Orange Cty.*,
  925 F.3d 73 (2d Cir. 2019) ...................................................................................................... 3

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) ............................................................................................................... 13

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (Fed. Cir. 2004) ......................................................................................... 4, 13

*EON Corp. IP Holdings LLC v. Cisco Sys.*,
  36 F. Supp. 3d 912 (N.D. Cal. 2014), *aff'd per curiam*, 595 F. App'x 991
  (Fed. Cir. 2015) ................................................................................................... 10, 11, 12, 13

*Holotouch, Inc. v. Microsoft Corp.*,
  2018 U.S. Dist. LEXIS 84152 (S.D.N.Y. May 18, 2018) ........................................................ 3

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991) ............................................................................................... 4

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  572 U.S. 915 (2014) ................................................................................................................. 3

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2016)..................................................................................2

*Noble Security, Inc. v. Acco Brands Corp.*,
    No. 1:16-cv-9129-PGG (S.D.N.Y. March 31, 2018), Dkt. No. 34 ...........................3

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)................................................................................13

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017)..................................................................................2

*W. Express Bancshares, LLC v. Green Dot Corp.*,
    2019 U.S. Dist. LEXIS 171412 (S.D.N.Y. Oct. 2, 2019), *aff'd on other
    grounds*, 816 F. App'x 485 (Fed. Cir. 2020) .............................................................2

*Weisner v. Google LLC*,
    2021 U.S. Dist. LEXIS 1024 (S.D.N.Y. Jan. 4, 2021)..................................... *passim*

**Statutes**

35 U.S.C. § 271(a) ............................................................................................................3

35 U.S.C. § 271(b) ............................................................................................................4

35 U.S.C. § 271(c) ............................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 3

I. **INTRODUCTION**

Plaintiff Hydro Net LLC fails to adequately plead a plausible claim of either direct, induced, or contributory patent infringement. Accordingly, Defendant Sharp Electronics Corporation ("SEC") moves to dismiss the Complaint in its entirety under Fed. R. Civ. P. 12(b)(6).

Plaintiff alleges that SEC infringes independent claims 1, 6 and 10 (the "Asserted Claims") of U.S. Patent No. 7,187,706 B2 ("the '706 Patent"). ECF No. 1 ("Compl."), ¶¶ 11-14. As stated in the parties' May 14, 2021 summary, the '706 Patent is "generally directed to packetized, code-division-multiple-access ("CDMA") communications, and more particularly to handoff of a remote station (*e.g.*, a mobile phone), between base stations (*e.g.*, cellular towers operated by a mobile service provider)." Ex. 1 (Letter to Honorable Jed S. Rakoff summarizing the Patent, May 14, 2021) at 2.

The '706 Patent states that the purported invention is an "improvement and method to a […] CDMA system, and more particularly [] a cellular structure or environment […]" ECF No. 1-1 (the '706 Patent) at 4:56-60.  Figures 1 and 2 disclose cellular network architectures in accordance with the purported invention.  *Id.* at 5:25-47.  The '706 Patent alleges that the disclosed improvements mitigate data loss and decreased network capacity during handoffs.  *See* ECF No. 1-1 at 2:3-9; Ex. 1 at 2.  The specification states that the alleged invention provides these benefits in two ways.  *See* Ex. 1 at 1.  First by monitoring the signal strength between a remote station and one or more base stations to identify a suitable base station prior to initiating the handoff.  *See* ECF No. 1-1 at 7:36-8:12.  Second, by allowing the remote station to continue transmitting data to a first base station until communication with a second base station has been established.  *See* ECF No. 1-1 at 8:13-54.

Plaintiff alleges that SEC has directly infringed the Asserted Claims through its customers' and/or employees' use of the SharpUSA Aquos Crystal mobile phone (the "Accused Product").[1]  Compl., ¶ 11.  This is the only specific product identified by Plaintiff.  *Id.*, *see also* ECF No. 1-2 (Plaintiff's claim chart).  Plaintiff further accuses SEC of induced and contributory infringement.  *Id.*, ¶¶ 15-17

A complaint must plausibly allege that an accused product or alleged infringer practices *each of the limitations* found in at least one asserted claim for a legally sufficient contention of direct infringement.  *Weisner v. Google LLC*, 2021 U.S. Dist. LEXIS 1024, at *2 (S.D.N.Y. Jan. 4, 2021); *W. Express Bancshares, LLC v. Green Dot Corp.*, 2019 U.S. Dist. LEXIS 171412, at *7-8 (S.D.N.Y. Oct. 2, 2019), *aff'd on other grounds*, 816 F. App'x 485 (Fed. Cir. 2020).  Plaintiff's direct infringement allegations, however, as explained below, fail to meet the basic plausibility standard required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and should be dismissed.

First, Plaintiff does not allege ***any*** facts that plausibly support direct infringement by SEC for at least two limitations of each Asserted Claim.  Indeed, for those limitations, the alleged facts actually plead involve a third-party, not SEC.[2]  In particular, Plaintiff alleges that the two

---

[1] SEC understands that the Accused Product was discontinued in approximately 2015 and no other Sharp mobile phones have been available in the United States since that time.

[2] The Complaint does not, and cannot reasonably be interpreted to, plead divided infringement. *See W. Express Bancshares,* 2019 U.S. Dist. LEXIS 171412, at *7-8 (granting motion to dismiss direct infringement claims against the only named defendant where Plaintiff alleged that certain method steps were practiced by unnamed third parties but failed to plead divided infringement or allege sufficient facts to support such a claim).  While Plaintiff's claim chart here identifies a third party as allegedly practicing at least two limitations of the Asserted Claims, SEC is the only named defendant and Plaintiff's infringement allegations are directed *solely* to actions purportedly taken by SEC.  Compl., ¶¶ 11-14.  Further, Plaintiff does not allege any facts to support a claim that SEC exercises "direction or control" over, or has entered into a "joint enterprise" with, any third parties.  *See Travel Sentry, Inc. v. Tropp,* 877 F.3d 1370, 1378 (Fed. Cir. 2017)*; Lyda v. CBS Corp.,* 838 F.3d 1331, 1339 (Fed. Cir. 2016).

"transmitting" limitations discussed below are practiced by a third party (*e.g.*, cell towers of a mobile communications service) – not by SEC or by the Accused Product. *See, e.g.*, ECF No. 1-2 at 14, 81, 148. For at least this reason, Plaintiff has failed to plead a plausible claim for direct infringement by SEC. Without a plausible claim of direct infringement, the induced and contributory infringement claims are also fatally deficient and must also be dismissed.

## II. LEGAL STANDARDS

A complaint should be dismissed under Rule 12(b)(6) when it fails to "give the defendant fair notice of what the […] claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted and alteration in original). The Supreme Court requires that a complaint must plead "enough ***facts*** to state a claim to relief that is plausible on its face." *Id*. at 570 (emphasis added). The "mere possibility of misconduct" is not enough. *See Iqbal*, 556 U.S. at 679. A complaint demonstrates plausibility when "the plaintiff pleads ***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added); *Charles v. Orange Cty.,* 925 F.3d 73, 81 (2d Cir. 2019).

The *Iqbal/Twombly* plausibility standard applies to allegations of direct infringement under 35 U.S.C. § 271(a). *See Atrip v. Ball Corp*. 735 Fed. Appx. 708, 714 n.4 (Fed Cir. 2018); *Holotouch, Inc. v. Microsoft Corp.*, 2018 U.S. Dist. LEXIS 84152, at *8 (S.D.N.Y. May 18, 2018) (the "familiar pleading standard outlined in *Twombly* and *Iqbal* applies to" patent cases). To satisfy *Iqbal/Twombly*, the Complaint must "plausibly allege that the ***accused product practices each of the limitations*** found ***in at least one asserted claim***." *Weisner*, 2021 U.S. Dist. LEXIS 1024, at *2 (emphasis added) (quotation marks and citation omitted); *Noble Security, Inc. v. Acco Brands Corp.*, No. 1:16-cv-9129-PGG (S.D.N.Y. March 31, 2018), Dkt. No. 34 at 21, 23 (granting motion to dismiss direct infringement claims for failure to plead "sufficient facts to

3

make it plausible that Defendant has directly infringed the [asserted] patent"); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (a "patent is not infringed unless all the steps [of the asserted method claim] are carried out"). "[T]he failure to meet a *single limitation* is sufficient to negate infringement of [a] claim." *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed. Cir. 1991) (emphasis added).

"Indirect infringement, whether inducement to infringe or contributory infringement, *can only arise in the presence of direct infringement*." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) (emphasis added). Indirect infringement may be plead either by induced infringement, under 35 U.S.C. § 271(b), or contributory infringement, under 35 U.S.C. § 271(c). To sufficiently plead induced infringement, "*the patentee must show, first that there has been direct infringement*, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Ave. Innovations v. E. Mishan & Sons Inc.*, 2019 U.S. Dist. LEXIS 172386, at *29 (S.D.N.Y. Sep. 10, 2019) (emphasis added) (citing *MEMC Elec. Materials Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). To sufficiently plead contributory infringement, a plaintiff must allege facts supporting: "1) *that there is direct infringement*, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *3D Sys., Inc. v. Formlabs, Inc.*, 2014 WL 1904365, at *5 (S.D.N.Y. May 12, 2014) (emphasis added) (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

### III.   ARGUMENT

#### A.   Plaintiff fails to plead facts to support a plausible allegation of direct infringement by SEC.

Plaintiff fails to meet the minimum pleading requirement for direct infringement – alleging that each and every limitation of the asserted claims is practiced *by the accused infringer*.

As noted above, Plaintiff alleges direct infringement solely by SEC, through its customers' or employees' use of the Accused Product. *Id.*, ¶ 11; *see* ECF No. 1-2 at, *e.g.*, 1, 70, 138.

However, the Asserted Claims – and, indeed, all independent claims of the '706 Patent – are directed to a communications system/network and require *three* distinct entities or actors:

- a "*first base station (BS)*" that "transmit[s] […] a "first BS-packet signal";
- a "*second base station*" that "transmit[s] […] a second BS-packet signal"; and
- a "*remote station*" that "receive[s]" the first and second "BS-packet signals."

*See, e.g.*, ECF No. 1-1 at 12 (claim 1). There are no plausible circumstances in which Plaintiff can sufficiently plead direct infringement solely by use of the Accused Product, given that the independent claims are directed to and require a communication system/network, not a mobile phone.

Claim 1 is reproduced below:[3]

> 1. An improvement method to a frequency division duplex (FDD) distributed-network, spread-spectrum system comprising the steps of:

---

[3] Asserted claim 1 is representative of asserted claims 6 and 10. Claims 6 and 10 are directed to a system that performs the same functions as the method of claim 1, with claim 10 being a means-plus-function formulation. The remaining independent claims (14, 16, 18, 20, 22, and 24) recite additional limitations, but at a minimum, all independent claims of the '706 Patent recite

5

> *[a] transmitting*, using radio waves, *from a first base station (BS),* located in, and part of, the FDD distributed network, *a first BS-packet signal* at a first frequency;
>
> *[b] receiving at a remote station (RS) the first BS-packet signal*, thereby obtaining a first RS-received signal;
>
> *[c] transmitting*, using radio waves, *from a second base station a second BS-packet signal* at a second frequency, with the second frequency different from the first frequency;
>
> *[d] receiving at said remote station the second BS-packet signal* at the second frequency, thereby obtaining a second RS-received signal;
>
> [e] monitoring at said remote station a first signal metric of the first RS-received signal, and a second signal metric of the second RS-received signal; and
>
> [f] determining at said remote station that the first signal metric of the first RS-received signal falls below a threshold, and that the second signal metric of the second RS-received signal is above the threshold, and that the second base station has available capacity, thereby determining to change base stations.

ECF No. 1-1 at 12 (annotations and emphasis added).

Not surprisingly, Plaintiff does not – and cannot – plead sufficient facts to support direct infringement of every limitation *by SEC*. Notably, Plaintiff's allegations are directed to "*A system*, spread-spectrum system [sic], *utilized by the accused product*." *See, e.g.*, ECF No. 1-2 at 1, 12, 14, 16, *infra*. Indeed, for limitations *[a]* and *[c]*, Plaintiff alleges that these steps are practiced by one or more third parties. *See, e.g.,* ECF No. 1-2 at 14, 81, 148. Specifically, Plaintiff identifies the recited *first* and *second* base stations (BS) as "serving cells" (*e.g.*, cell towers) in a "public land mobile network," *i.e.*, elements *of a third-party mobile communications service*. *Id.* Plaintiff identifies only the recited "*remote station (RS)*" as the Accused Product. *See, e.g.,* ECF No. 1-2 at, *e.g.*, 14, 81, 148.

---

first and second base stations performing the actions of transmitting a first and second BS-packet signal (respectively) and receiving those signals at a remote station.

Plaintiff's allegations are reproduced below, in relevant part. As shown below, the accused system includes both the SEC Accused Product (emphasized *in blue*) and numerous third-party components (emphasized in *red* and *orange*). *Id.* The "serving cells" of the third-party network that Plaintiff points to as the recited first and second "base stations" are depicted as "eNodeB" or "eNB" in the figures below. *See* ECF No. 1-2 at 7. Plaintiff's alleged evidence makes clear that these base stations are part of a mobile communication network. *Id.* ("The LTE access network is simply a network of base stations, evolved NodeB (eNB), generating a flat architecture"). The Accused Product, which Plaintiff alleges is the recited "remote station," is identified as "UE" or "user equipment."

- **Uplink:** the transmission from the UE or user equipment to the eNodeB or base station.
- **Downlink** the transmission from the eNodeB or base station to the UE or user equipment.



Uplink and downlink directions

ECF No. 1-2 at 12.

As clearly illustrated by the *red*, *blue*, and *orange* emphasis below, Plaintiff's allegations rely on *multiple* independent actors and do not allege that every claim limitation is practiced by SEC, as required for a legally sufficient allegation of direct infringement.

7

| US7187706 | SharpUSA's Aquos Crystal Phone ("The accused product") |
|---|---|
| 1. An improvement method to a frequency division duplex (FDD) distributed-network, spread-spectrum system comprising the steps of | *A system, spread-spectrum system*, utilized by the accused product *practices* an improvement method to a frequency division duplex (FDD) distributed-network (e.g., a network comprising the accused product with 802.11b/g/n capability, another product/device to which the accused product can communicate via 802.11b/g/n communication and several base stations). [4]<br><br>[…]<br><br>- **Uplink:** the transmission from the UE or user equipment to the eNodeB or base station.<br>- **Downlink** the transmission from the eNodeB or base station to the UE or user equipment.<br><br>Uplink and downlink directions<br><br>In order to be able to be able to transmit in both directions, a user equipment or base station must have a duplex scheme. There are two forms of duplex that are commonly used, namely FDD, frequency division duplex and TDD time division duplex..<br><br>https://www.electronics-notes.com/articles/connectivity/4g-lte-long-term-evolution/tdd-fdd-td-lte-duplex-schemes.php<br><br>[…] |

---

[4] Despite the general references here to 802.11 b/g/n/ (*i.e.*, Wi-Fi) capabilities, Plaintiff only presents evidence regarding the LTE (*i.e.*, cellular mobile) capabilities of the Accused Product.

| | |
|---|---|
| |  http://hershenq.blogspot.com/2012/03/architecture-of-lte-network-and-working.html |
| *[a] transmitting,* using radio waves, *from a first base station* (BS), located in, and part of, the FDD distributed network, a first BS-packet signal at a first frequency; [b] *receiving at a remote station (RS) the first BS-packet signal*, thereby obtaining a first RS-received signal | *The system* utilized by the accused product *practices transmitting*, using radio waves, *from a first base station (BS) (e.g., a serving cell for a user equipment)*, located in, and part of, the FDD distributed network, a first BS-packet signal (e.g., a reference signal) at a first frequency (e.g., a first frequency) and *receiving at a remote station (RS) (e.g., the accused product) the first BS-packet signal* (e.g., a reference signal), thereby obtaining a first RS-received signal (e.g., a demodulated signal from a first reference signal received from the serving cell to determine RSRP value for inter-frequency cell reselection). […] |



Figure 4.1-1: Overall Idle Mode process

When a UE is switched on, a public land mobile network (PLMN) is selected by NAS. For the selected PLMN, associated RAT(s) may be set [5]. The NAS shall provide a list of equivalent PLMNs, if available, that the AS shall use for cell selection and cell reselection.

With the cell selection, the UE searches for a suitable cell of the selected PLMN and chooses that cell to provide available services, further the UE shall tune to its control channel. This choosing is known as "camping on the cell".

https://www.etsi.org/deliver/etsi_ts/136300_136399/136304/08.10.00_60/ts_136304v081000p.pdf

[…]

| | |
|---|---|
| [c] *transmitting, using radio waves, from a second base station a second BS-packet signal* at a second frequency, with the second frequency different from the first frequency; [d] *receiving at said remote station the second BS-packet signal* at the second frequency, thereby obtaining a second RS-received signal; […] | **The system** utilized by the accused product **practices** *transmitting*, using radio waves, *from a second base station (e.g., a cell other than the serving cell of a user equipment) a second BS-packet signal* (e.g., a reference signal from a cell other than the serving cell) at a second frequency (e.g., inter-frequency cell reselection, a cell operates at different carrier frequency, i.e., reference signal frequency, than the serving cell of a user equipment), with the second frequency different from the first frequency and *receiving at said remote station (e.g., the accused product) the second BS-packet signal* (e.g., a reference signal from a cell other than the serving cell) at the second frequency, thereby obtaining a second RS-received signal (e.g., a demodulated signal from a reference signal received from a cell other than the serving cell to determine RSRP value for inter-frequency cell reselection). […] |

10

ECF No. 1-2 at 1, 12, 14, 16 (underlining in original, other emphasis and claim limitation letters added). Furthermore, the Accused Product (mobile phone) alleged to be *receiving* the recited "BS-packet signals," cannot also be the entity *transmitting* the "BS-packet signals." Accordingly, Plaintiff cannot plausibly sustain its claim for direct infringement

As evidenced by Plaintiff's own allegations, a single accused infringer (*i.e.*, SEC via the Accused Product) does not, and cannot plausibly practice all limitations of the asserted claims – or any other claim of the '706 Patent. *Weisner*, 2021 U.S. Dist. LEXIS 1024 (S.D.N.Y. Jan. 4, 2021) at *3-4; *see also, EON Corp. IP Holdings LLC v. Cisco Sys.* ("*EON*"), 36 F. Supp. 3d 912, 926 (N.D. Cal. 2014) (granting summary judgment of no direct infringement by a single accused infringer where the accused direct infringer did not practice all limitations of the asserted claims), *aff'd per curiam*, 595 F. App'x 991 (Fed. Cir. 2015).

In *Weisner,* this Court recently dismissed a Complaint where the Plaintiff failed to plead that the accused direct infringer (Google) actually practiced every limitation of the asserted claims. *Id.* at 3. Like SEC in the present action, Google was the only named defendant, accused of directly and indirectly infringing various system and method claims of four asserted patents.[5] *Id.* Also like the present action, the asserted claims in *Weisner* all "require multiple actors to perform the claim method steps, such as the users, the vendors, and some sort of GPS provider," all of whom were third-parties. *Id.* The Court held that Weisner was required to plead sufficient facts to support a plausible claim that Google - the only accused direct infringer – practiced every limitation of the asserted claims. *Id.* at 2-3. Indeed, like Plaintiff does here by pointing to the third-party "serving cells," Weisner similarly pointed to activities by third parties instead of

---

[5] Finding that Weisner had not sufficiently plead direct infringement, the Court also dismissed the indirect infringement claims, "Because the complaint does not sufficiently allege direct infringement." *Id*. at 4.

11

Google. *Id.* Finding that Weisner had failed to meet the pleading standard for direct infringement, the Court granted Google's Motion to Dismiss.

The same outcome should follow here. Even though Plaintiff has plead significantly more facts than were presented in *Weisner* (where the plaintiff did not provide a claim chart or similar analysis), the plausibility of the pleadings is nevertheless similarly non-existent. As detailed above, the Asserted Claims, like those in *Weisner*, require different parties to practice different affirmative steps. Plaintiff has not, and cannot, plausibly plead that SEC practices every limitation in the Asserted Claims. Just as in *Weisner*, Plaintiff's Complaint should be dismissed in its entirety.

While *EON* was decided on summary judgment, the Court's analysis is both legally and technologically instructive here. In *EON,* the Plaintiff (EON) asserted system and method claims for a cellular communication network that required active participation from both the mobile network operator ("transmitting" data from a base station) and the mobile device ("determining" if the device is receiving a signal from the mobile network). *EON,* 36 F. Supp. 3d at 921-24 (system claims), 925-26 (method claims). EON alleged *indirect* infringement by both network operators (Sprint and US Cellular) and device manufacturers (Cisco, HTC, and Motorola). Critically, however, EON *only* accused the network operators of *direct* infringement. *Id.* at 915.

In briefing and at oral argument, EON admitted that the "determining" step was not practiced by the network operators, but instead by the mobile device and/or its user. *Id.* at 921, 925. This deficiency was fatal to EON's case. After losing its position regarding the "determining" step, EON attempted to rehabilitate its flawed infringement contentions by shifting its position to allege that the end user (instead of the network operator) *could* perform the "transmitting" steps. The Court rejected this tactic, finding:

12

> First of all, in the operative claim charts, EON explicitly accuse the *mobile network operators*, not the end-users, of being the entities who perform the "transmitting" steps. […] This, of course, makes sense. A cellphone user cannot be the entity who transmits outgoing data from a base station […] In any case, whether or not the users *could* perform these steps, the infringement contentions contain no allegations saying that they do. The claim charts say nothing at all about the user directly infringing by performing the claimed "transmitting" steps.

*Id*. at 925-26 (emphasis in original) (internal citations omitted). The Court granted summary judgment, holding, "[n]o Defendant performs this step, and therefore no Defendant is a direct infringer of the method claims." *Id*. at 925; *see also id.* at 923-24 (no infringement of system claims for same reason). Without a viable claim of direct infringement, the Court also granted summary judgment regarding the indirect infringement claims. *Id.* at 924 ("since no entity accused of direct infringement actually infringes, all Defendants are also entitled to summary judgment against the claims of indirect infringement").

A similar analysis applies here. Like EON: (a) the Asserted Claims here cover an entire cellular communication network and require affirmative acts by both network operator and user device; (b) the Plaintiff here has only accused one of the relevant parties of direct infringement; and (c) Plaintiff's claim charts here accuse at least two separate parties of practicing different limitations. And, like *EON*, there can be no direct infringement because Plaintiff has not alleged that the accused infringer practices every limitation of the Asserted Claims.

**B.     Similarly, Plaintiff fails to plead a plausible claim for indirect infringement.**

Plaintiff's claims for induced and contributory infringement also fail to meet the minimum pleading requirements and should also be dismissed. As an initial matter, "[i]ndirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement." *Dynacore*, 363 F.3d at 1272. To support a claim for indirect infringement, a plaintiff must plead "facts sufficient to allow an inference that at least one direct

13

infringer exists." *In re Bill of Lading*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *Weisner*, 2021 U.S. Dist. LEXIS 1024 at *3-4 (granting motion to dismiss indirect infringement claims, "Because the complaint does not sufficiently allege direct infringement"); *EON,* 36 F. Supp. 3d at 924. Here, the Complaint fails to state a claim for direct infringement for the reasons discussed above. *See* Section III.A, *supra*. For this reason alone, Plaintiff's indirect infringement claims should be dismissed.

Even if Plaintiff were able to plausibly state a claim for direct infringement, which it has not and cannot, both forms of indirect infringement require proof of the defendant's knowledge of the asserted patents at the time of the acts alleged to constitute infringement. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (induced infringement); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) (contributory infringement). Plaintiff does not allege that SEC had knowledge of the '706 Patent prior to being served with the Complaint.

## IV. CONCLUSION

As set forth above, the Complaint fails to state a plausible cause of action for direct infringement because Plaintiff does not plausibly allege any facts that SEC practices each and every limitation of the Asserted Claims. Indeed, as shown above, Plaintiff cannot plausibly plead that that the accused mobile phones directly infringe because all the Asserted Claims are directed a communication system/network, and require two base stations *in addition to* a mobile device. Without a plausible claim for direct infringement, the indirect and contributory infringement claims must also be dismissed.

Dated:  May 28, 2021                               Respectfully submitted,

*/s/ Cono A. Carrano*
Cono A. Carrano (NY Bar No. 2622116)
Ryan S. Stronczer (*pro hac vice* pending)
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
ccarrano@akingump.com
rstronczer@akingump.com

*Counsel for Defendant Sharp Electronics Corporation*